IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Civil Action No. 03-CV-02639-WYD-OES

DAVID R. PRICE

    Plaintiff,

v.

WILSON SPORTING GOODS COMPANY, a Delaware corporation; TARGET CORPORATION, a Minnesota corporation; and TRUE TEMPER SPORTS, INC., a Delaware corporation,

    Defendants.

---

**ORDER**

---

THIS MATTER is before the Court on Defendant True Temper Sports, Inc.'s Motion for Summary Judgment, filed March 18, 2005.

**I.    Introduction**

Plaintiff's claims arise from a set of Wilson golf clubs allegedly purchased at Target in September of 2001. Pl.'s Sec. Am. Compl. at 3. On April 28, 2002, Plaintiff was struck in the head by the club head of the Wilson pitching wedge while playing golf at the Sunset Golf Course in Longmont, Colorado. *Id.* at 4. When Plaintiff's son swung at the ball, the head of the pitching wedge separated from the shaft of the club, striking Plaintiff where he was standing approximately 20 yards away. *Id.* As a result of the impact, Plaintiff alleges he suffered an open depressed skull fracture with bruising to the brain, internal swelling, severe head lacerations, and bleeding. *Id.*

Plaintiff asserts five claims for relief against Defendant True Temper Sports, Inc.,

all of which are at issue in Defendant True Temper's Motion for Summary Judgment. These include (1) a claim for strict product liability which alleges that True Temper designed, manufactured, and sold the golf club shaft which broke and injured Plaintiff; (2) a claim for breach of the implied warranty of merchantability; (3) a claim for negligence in the design and manufacture of the pitching wedge; (4) a claim for negligent failure to warn; and (5) a claim of strict liability failure to warn. *See* Pl.'s Second Am. Compl. at 5-12. *See also* Def.'s Mot. for Summ Judgment. Defendant filed his Motion for Summary Judgment on March 18, 2005. Plaintiff filed a Response in Opposition to Defendant True Temper Sports, Inc.'s Motion for Summary Judgment on April 1, 2005.

## II. Summary Judgment

Summary judgment may be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56©. The burden is on the party making the motion to "show the absence of a genuine issue of material fact." *Otteson v. United States*, 622 F.2d 516, 519 (10th Cir. 1980). "[T]he pleadings and other documentary evidence must be construed in favor [of the nonmoving party.]" *Id.* Summary judgment should be granted "against a party who fails to make a showing sufficient to establish . . . an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). I address Defendant's arguments for summary judgment in the order presented in its Motion.

### A. Strict Product Liability Claim

Defendant True Temper claims that "Plaintiff cannot direct the court to facts that the golf club shaft in question meets Colorado's 'unreasonably dangerous' status required for use of the doctrine of strict product liability." Def.'s Mot. for Summ. J. at 5. Defendant states that "the fact that millions of golfers every day play golf, using shafts manufactured by Defendant True Temper, without injury belies Plaintiff's claims for relief under the doctrine of strict liability." *Id.* at 5.

The Supreme Court of Colorado expressly adopted the doctrine of strict product liability in tort stated in § 402A of the Restatement (Second) of Torts in *Hiigel v. General Motors Corp.,* 544 P.2d 983, 987 (Colo. 1975) (en banc). Section 402A provides:

> (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if (a) the seller is engaged in the business of selling such a product, and (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

To establish a prima facie case of strict liability based on a defective product under Colorado law, the plaintiff must show: "(1) the product is in a defective condition unreasonably dangerous to the user or consumer; (2) the product is expected to and does reach the consumer without substantial change in the condition in which it was sold; (3) the design defect caused the plaintiff's injury; (4) the defendant sold the product and is engaged in the business of selling products; and (5) the plaintiff sustained damages." *Barton v. Adams Rental, Inc.*, 938 P.2d 532, 536-37 (Colo. 1997)

(en banc).

Plaintiff bears the burden of proving that the product is defective and unreasonably dangerous. *Armentrout v. FMC Corp.*, 842 P.2d 175, 182 (Colo. 1992). "[T]he occurrence of an accident in connection with the use of a product does not necessarily make the product defective and unreasonably dangerous." *Schultz v. Linden-Alimak, Inc.*, 734 P.2d 146, 148-49 (Colo. App. 1986). Instead, the plaintiff must show that "the risks of the design of the [product] outweigh[] any benefits." *Barton*, 938 P.2d at 538.

Plaintiff has provided evidence, through expert reports, that the pitching wedge, particularly the shaft, was defective and that because of the defect, the pitching wedge was unreasonably dangerous to a person who might reasonably be expected to use or be affected by it. The expert reports state that the pitching wedge was defective because the epoxy used to connect the shaft to the head hosel was not evenly distributed and that the grinding of the end of the shaft in order to make the connection was both deeper than required and exposed above the hosel. *See* Shira Report and Cornelissen Report. Defendant claims that this speaks to Wilson's manufacturing of the club, rather than the quality of True Temper's shaft. However, the reports reference defects in the shaft itself. Cornelissen's report noted "[t]he presence of welding defects at the longitudinal seams in the shafts further reduced the strength of the shafts and increased the probability of failure during normal use." Cornelissen Report at 7. Shira's Report also noted that the club shaft was made of hard steel (Shira Report at 3), which exceeded True Temper's own specifications. See Pl.'s Resp., Ex. 2.

Based on the foregoing, I conclude that there is a genuine issue of material fact regarding True Temper's strict liability in tort for manufacturing a defective club shaft. Plaintiff has provided evidence through expert reports of alleged design defects, and while True Temper disagrees with aspects of these reports, it has not provided expert reports of its own. I conclude that summary judgment should be not entered in favor of Defendant True Temper on the claim of strict product liability.

### B. Strict Liability Failure to Warn

Defendant states that because golf clubs are not "naturally dangerous," no warning was required. Def.'s Mot. for Summ. J. at 6. However, "[u]nder strict liability, the test is whether the manufacturer's failure to warn adequately of the potentially dangerous propensities of its product rendered the product unreasonably dangerous." *Barton v. Adams Rental, Inc.*, 938 P.2d 532, 539 (Colo. 1997) (en banc). Further, "[s]hould the manufacturer fail to give warnings of dangers inherent in the product or in its intended use sufficient to make it safe, the product is in a defective condition 'unreasonably dangerous' to the user or consumer." *Id.* (citing *Hiigel v. General Motors Corp.*, 544 P.2d 983, 987 (1975)).

Plaintiff contends that True Temper knew that others had been injured by True Temper's shafts and that this knowledge gave rise to a duty to warn. Pl.'s Resp. at 10. Plaintiff further states that Defendant is strictly liable for failing to warn of dangers. *Id.* at 11. Defendant states that the "requirement for warning is determined by taking into consideration the likelihood of accident and seriousness of consequences of failure to warn." Def.'s Mot. for Summ. J. at 5–6 (citing *Downing v. Overhead Door Corp.*, 707

P.2d 1027, 1033 (Colo. App. 1985)).  Defendant further contends that because golf clubs are not "naturally dangerous," there was no duty to warn.  *Id*.  I find that the natural dangerousness of golf clubs is not the proper inquiry.  Rather, there is a genuine issue of material fact as to Defendant's duty to warn, because if the shaft was defective, it may also have been unreasonably dangerous.  As such, summary judgment is not appropriate on this issue.

### C. Negligent Manufacture of Golf Club Shaft

Under Colorado law, the elements of a claim for negligence are "a duty owed by the defendant to the plaintiff, a breach of that duty, injury to the plaintiff, and a proximate cause relationship between the breach and the injury."  *Casebolt v. Cowan*, 829 P.2d 352, 356 (Colo. 1992) (en banc).  Defendant takes issue with the proximate cause prong of this analysis.  "To establish causation, the plaintiff must prove that the defendant's conduct was a substantial contributing cause of the injury."  *Graven v. Vail Assocs., Inc.*, 909 P.2d 514, 520 (Colo. 1996) (en banc).  Defendant claims that Plaintiff cannot show that "True Temper's breach of duty was the proximate cause of his injuries . . . .  In fact, his own experts conclude that the alleged defect in the golf club came from assembly, not the manufacture of the shaft, which is the extent of True Temper's activity."  Def.'s Mot. for Summ. J. at 6.

Defendant especially takes issue with the fact that a four iron, and not the pitching wedge at issue, was tested by Plaintiff's expert, because Defendant claims that "there is no evidence that these two shafts cam from the same 'lot of tubing.'"  *Id*. at 7.  To counter this, Plaintiff provided the Affidavit of Chester S. Shira, who suggested that

the clubs in the Wilson Ultra set purchased by Plaintiff were "most probably from a single lot of True Temper Shafts, i.e., were made from the same lot of tubing." Pl.'s Resp., Ex. 1, at 2, ¶ 6.  Shira says this is because products such as golf club shafts are "processed as an identified lot to ensure traceability and quality assurance, and it is standard practice for this to be done." *Id.* at ¶ 3  Further, as noted above, Cornelissen states that there was in fact a welding defect in the True Temper shaft.  Cornelissen Report at 7.

Where various factors are alleged to have contributed to a plaintiff's injuries, "the determination whether a particular factor was a substantial factor must ultimately be made by the jury." *Graven*, 909 P.2d at 521.  Based on the issues presented above, I find that there are unresolved issues surrounding proximate cause and, consequently, I conclude that genuine issues of material fact exist as to True Temper's liability in tort for negligence in manufacturing a defective pitching wedge.

### D.  Negligent Failure to Warn

Other than mentioning this issue in a subheading (see Def.'s Mot. for Summ. J. at 6), Defendant does not directly address this claim in its Motion.  I note that, "[w]hen a manufacturer or seller knows or should know of unreasonable dangers associated with the use of its product and not obvious to product users, it has a duty to warn of these dangers; and a breach of this duty constitutes negligence." *Palmer v. A.H. Robins Co., Inc.* 684 P.2d 187, 198 (Colo. 1984) (en banc).  However, because Defendant does not provide any evidence or argument regarding this issue, I find that summary judgment is not appropriate.

### E. Implied Warranty of Merchantability

The relevant Colorado statute states that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." COLO. REV. STAT. § 4-2-314(1). Defendant claims that because it is "not a seller of the goods at issue," the implied warranty of merchantability does not apply to it. Def.'s Mot. for Summ. J. at 8. Defendant states, "Plaintiff shows no evidence that True Temper, which sold the shaft to Wilson and not to Plaintiff, gave any implied warranty of merchantability for the entire club." *Id.*

I find that is not the proper inquiry. Colorado law makes clear that "implied warranty liability can extend to the manufacturer of component parts." *Union Supply Co. v. Pust*, 583 P.2d 276, 285 (Colo. 1978) (en banc). The inquiry focuses on whether the product was "fit for the ordinary purposes for which is was used." *Id.* Specifically, "the lack of fitness must be found in the component parts before they leave the component parts manufacturer, and not merely in the completed system." *Id.* The underlying issue is whether the product was "fit for the ordinary purposes for which is was used" (*id.*), and I find that there is a genuine issue of material fact as to whether the True Temper shaft was fit for the ordinary purposes for which it was used. Accordingly, summary judgment is not appropriate on this issue.

### V. Conclusion

Accordingly, for the reasons stated above, it is

ORDERED that Defendant True Temper Sports Inc.'s Motion for Summary Judgment, filed March 18, 2005, is **DENIED**.

Dated: October 27, 2005

BY THE COURT:


s/ Wiley Y. Daniel
Wiley Y. Daniel
U. S. District Judge