IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Civil Action No.  03-cv-02639-WYD-MEH

DAVID R. PRICE,

      Plaintiff,

v.

WILSON SPORTING GOODS COMPANY, a Delaware Corporation,

      Defendant.

_____

**ORDER**
_____

THIS MATTER is before the Court on Defendant Wilson Sporting Goods

Company's Opposed Motion for Modification/Correction of Jury Verdict [# 130], filed

February 3, 2006, and Plaintiff's Motion to Amend Judgment Entered on February 9,

2006 [# 140], filed February 13, 2006.  By way of background, I note that this case

involved a defective golf club manufactured by Wilson Sporting Goods Company that

injured Plaintiff David R. Price.  A five-day jury trial was held in this case during the

week of January 23, 2006, and on January 31, 2006, the jury reached a verdict.  The

judgment, entered on February 9, 2006, was in favor of Plaintiff as follows:

$1,269,000.00 in noneconomic damages; $523,221.86 in economic damages;

$188,000.00 in damages for physical impairment.  These amounts recognized that the

jury had assigned fault as follows: 3% to Plaintiff David R. Price; 3% to designated non-

party, David W. Price; and 94% to Defendant Wilson Sporting Goods Company.

Further, prejudgment interest was ordered to accrue on the total amount of

$1,980,221.86 at the legal rate of 8% from the date the action; post-judgment interest was ordered to accrue on the total amount of $1,980,221.86, plus prejudgment interest, at the legal rate of 4.60% per annum from the date of entry of judgment.  The parties now seek to modify that judgment.

### I. Modification of Jury Verdict and Judgment

In its motion, Defendant seeks to modify the jury verdict to make it consistent with Colorado Revised Statute § 13-21-102.5(3)(a), which addresses limitations on noneconomic damages, and to "modify/correct that verdict to reflect an amount no greater than Three Hundred Sixty Six Thousand Two Hundred Fifty and no/100 Dollars ($366,250) . . . ."  Def.'s Mot. at 1.  The limitation for noneconomic damages as provided by the Secretary of State under § 13-21-102.5(3)(a) is "$366,250 (with clear and convincing evidence the trial court may increase this amount to a maximum of $732,500)."  Plaintiff responded, stating that he "opposes the reduction of noneconomic damages to $366,250.00 because there is justification by clear and convincing evidence presented during the trial and by the jury's empathetic award for noneconomic damages that the full $732,500.00 allowed by the statute is warranted."  Pl.'s Resp. at 2.

I initially note that the Colorado Supreme Court has held that "a trial court should apportion pro rata liability among the defendants and plaintiff before it applies the statutory cap of section 13-21-102.5."  *General Elec. Co. v. Niemet*, 866 P.2d 1361, 1367–68 (Colo. 1994)(en banc).  Because the amounts listed above already reflect apportionment of liability, the issue before me is the application of the statutory cap and

whether there is justification for Plaintiff to receive the maximum amount permitted under the statute.

In order to exceed the statutorily permitted sum for noneconomic damages, I must find justification for a greater sum by clear and convincing evidence. *See* COLO. REV. STAT. § 13-21-102.5(3)(a). It has been noted that the "[l]egislative history of this section shows that the clear and convincing exception is a 'relief valve' in cases involving 'seriously or desperately' injured plaintiffs." *James v. Coors Brewing Co.*, 73 F.Supp.2d 1250, 1253 (D. Colo. 1999). In this case, the jury was instructed that noneconomic damages include physical and mental pain and suffering, inconvenience, emotional stress, and impairment of the quality of life. This category of damages does not include damages for physical impairment or disfigurement, which were a separate category.

Plaintiff argues that "[h]is noneconomic damages go to the heart of his injuries." Pl.'s Resp. at 18. Plaintiff points to the testimony of Dr. Wayne Wittenberg, Mr. Price's treating physician; Dr. Julie Stapleton, Plaintiff's rehabilitation expert; Dr. Nancy Powers, Plaintiff's neuropsychologist expert; Mary Montes, Plaintiff's long-time girlfriend; David W. Price, Plaintiff's son; and Mr. Price himself to justify exceeding the statutory limit. I find that the evidence presented at trial, including the testimony of these individuals, does in fact justify by the clear and convincing standard an increase to the maximum amount permitted by statute. Below, I highlight portions of the evidence that support this finding.

Dr. Wittenberg testified that following his injury, Mr. Price had difficulties with

"math, short-term memory, long-term memory, problem-solving, awareness of the deficits that he had, difficulty with concentrating and maintaining short-term thought, visual changes such as transient diplopia and vision processing." Tr. at 35:16–23 (attached to Pl.'s Resp. as Ex. C). He further noted that Plaintiff had depression and felt hopeless. Tr. at 36:6–7. He also testified that Mr. Price experienced pain and expressed "distress over difficulties with not being able to do usual activities, simple tasks and projects." Tr. at 38:13–16.

Plaintiff's family's testimony on this issue was especially persuasive. Mr. Price's son, David W. Price, testified that everything in his father's life changed following the accident, including his ability to feel good about himself, his ability to handle situations, his decision-making skills, and his ability to love his family. Tr. at 68:2–5 (attached to Pl.'s Resp. as Ex. D). He also described the activities that he previously did with his father that his father was no longer interested in doing or didn't feel he was able to do after the accident—e.g., playing golf, working on cars, riding motorcycles, working around the house, and attending sporting events. He testified that his father's outlook on life had "drastically changed," saying that before the accident, "he was outgoing, always had his own ideas. Was sharp as a tack . . . [and] witty. And that, that's not him anymore." Tr. at 74:3–6. It was apparent from David W. Price's testimony that the quality of Plaintiff David Price's life has been significantly diminished since his injury.

Plaintiff David Price testified that he still has pain in his neck. Tr. at 96:17–19 (attached to Pl.'s Resp. as Ex. E). He also testified that not being able to contribute financially to his household expenses makes him feel "less than human" and "useless."

Tr. 139:21–22.  He, like his son, testified about the activities he used to enjoy that he

no longer does.  These include playing golf, riding motorcycles, and working on cars.

Tr. at 148:8–12.  He stated, "I used to really enjoy to drive.  And now I—there's just too

much going on for me, you know, to be comfortable and enjoy . . . ."  Tr. at 152:19–21.

He also stated that he has no patience, gets frustrated easily, and doesn't enjoy being

around people.  He further testified that he gets anxious, worries about small things,

and feels alone.  Tr. at 153:1–15.  Plaintiff's description of his life following the accident

included physical and mental pain and suffering, inconvenience, emotional stress, and

impairment of quality of life.

Mary Montes, Plaintiff's long-time girlfriend, also testified about changes in

Plaintiff's personality, behavior, and qualify of life.  She described Mr. Price as angry,

depressed, confused, and withdrawn.  Tr. at 232:4–5 (attached to Pl.'s Resp. as Ex. I).

She testified that before his accident, he was outgoing and always busy doing

things—working in the garage, in the yard, or around the house.  Tr. at 232.   Ms.

Montes also described the change in their relationship, both physically and emotionally.

Tr. at 232–33.  She further explained that Mr. Price has headaches every day and that

these are often so severe that they keep him in bed.  Tr. at 238:15-20.

Dr. Powers, Plaintiff's neuropsychologist expert, testified that Mr. Price had

"permanent cognitive or intellectual deficits as a result of a right frontal-brain injury . . .

[which] were clearly affecting his ability to function emotionally, to be able to function

work-wise."  Tr. at 207:5–11 (attached to Pl.'s Resp. as Ex. G)  She explained that the

frontal lobes are responsible for problem-solving, reasoning, setting goals, and

following the steps to achieve those goals.  Tr. at 211:4–6.  She also stated that frontal lobe injuries result in a lack of motivation.  Tr. at 211:10–15.

I find that the summaries of Plaintiff's witnesses' testimony presented above, coupled with other evidence presented at trial, serve as clear and convincing evidence that Plaintiff's injuries are severe so as to justify exceeding the minimum statutory limitation on noneconomic damages.  Plaintiff is suffering from physical and mental pain and suffering, inconvenience, emotional stress, and impairment of the quality of life.  For the reasons noted in this Order, I find that the statutory cap should be exceeded in this case.

I next address the issue of prejudgment interest.  In Plaintiff's Motion to Amend Judgment Entered on February 9, 2006, he seeks to amend the amount of prejudgment interest.[1]  He states, "It is respectfully requested that the Court modify the Judgment to read that prejudgment interest shall accrue . . . at the legal rate of 9.0% from the date the action accrued, thereafter compounded annually from the date the action was filed, pursuant to C.R.S. § 13-21-101."  Pl.'s Mot. to Amend Judg. Entered on Feb. 9, 2006 at 2.  Defendant does not address this request in its response.  Under Colorado law, the amount of prejudgment interest on actions brought to recover damages for personal injuries is nine percent per annum.  COLO. REV. STAT. § 13-21-101(1).  Accordingly, I agree with Plaintiff that the Judgment should be amended to reflect that prejudgment interest shall accrue at nine percent.

---

[1]  In his motion, Plaintiff also asked the Court to enter judgment on the noneconomic and economic damages assessed by the jury.  The Court did in fact enter judgment on noneconomic and economic damages in the Judgment entered on February 9, 2006.  In his reply, Plaintiff acknowledged this and withdrew this portion of his motion.  I treat this portion of Plaintiff's motion as moot.

**II. Settlement with True Temper**

The next issue to be addressed involves a settlement with former Defendant True Temper.  This issue was raised in Plaintiff's Response to Defendant's Motion for Modification.  *See* Pl.'s Resp. at 20.  Defendant True Temper was dismissed with prejudice from this case based on a stipulation of the parties by Order dated December 9, 2005.  In that same Order, I ordered that no reference to the settlement may be made at trial.  I also denied without prejudice the parties' request that the Court, following a jury verdict, reduce the amount of any judgment entered by the amount of the settlement.  I stated that I would not address that issue until an actual jury verdict was rendered.

Plaintiff now requests that the verdict not be offset by the settlement with True Temper because counsel for Wilson asked Plaintiff's expert a question about defect in the golf club shaft which was manufactured by someone other than Wilson.  *See* Pl.'s Resp. at 20.  I do not find that this question is a reference to the settlement such that it breaches the parties' stipulation.  Plaintiff further requests that if the verdict is reduced by the settlement with True Temper, it should be done "in proportion to the actual damages awarded."  Pl.'s Resp. at 21.  This would in effect reduce the settlement by the same percentage by which the jury verdict is being reduced after comparative fault and the statutory cap are applied.  This is a creative argument but not a convincing one, and Plaintiff has cited no law which would support such a proportional reduction. The parties agreed that any recovery by Plaintiff would be offset by $125,000, and I find that the judgment should be reduced by that amount.

### III.  Conclusion

Based on the foregoing, it is

ORDERED that Defendant Wilson Sporting Goods Company's Opposed Motion for Modification/Correction of Jury Verdict [# 130], filed February 3, 2006, is **GRANTED IN PART AND DENIED IN PART**.  It is

FURTHER ORDERED that Defendant's Motion is **GRANTED** to the extent it seeks to make the Judgment consistent with Colorado Revised Statute § 13-21-102.5(3)(1).  It is

FURTHER ORDERED that Defendant's Motion is **DENIED** to the extent it seeks to limit Plaintiff's recovery to $366,250.  It is

FURTHER ORDERED that Plaintiff's Motion to Amend Judgment Entered on February 9, 2006 [# 140], filed February 13, 2006, is **GRANTED IN PART AND DENIED AS MOOT IN PART**.  It is

FURTHER ORDERED that Plaintiff's Motion is **GRANTED** to the extent it seeks to permit Plaintiff to recover $732,500 under Colorado Revised Statute § 13-21-102.5(3)(1).  It is

FURTHER ORDERED that Plaintiff's Motion is **GRANTED** to the extent it requests that prejudgment interest be entered at nine percent.  It is

FURTHER ORDERED that Plaintiff's Motion is **DENIED AS MOOT** to the extent it asks the Court to enter judgment on noneconomic and economic damages.

Dated:  May 23, 2006

BY THE COURT:


s/ Wiley Y. Daniel
Wiley Y. Daniel
U. S. District Judge